*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 14-CO-0453, 14-CO-0641, 16-CO-1152

COLIE L. LONG, APPELLANT,

V.

UNITED STATES, APPELLEE.

FILED 07/20/2017
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeals from the Superior Court
of the District of Columbia
(FEL-2346-96)

(Hon. Judith A. Smith & Hon. Lynn Leibovitz, Trial Judges)

(Submitted September 15, 2015          Decided July 20, 2017)

*Vincent A. Jankoski* was on the supplemental briefs for appellant.[1]

*Channing D. Phillips*, United States Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, *Jeffrey Ragsdale*, *Patricia A. Riley*, and *Ann K. H. Simon*, Assistant United States Attorneys, were on the supplemental briefs, for appellee.[2]

---

[1] Mr. Long initiated this appeal pro se; his court-appointed counsel, Mr. Jankoski, filed supplemental briefs on his behalf.

[2] *Ronald C. Machen Jr.*, United States Attorney at the time that brief was filed, and *Elizabeth Trosman*, *Elizabeth H. Danello*, *Jeffrey Ragsdale*, *Patricia Riley*, and *Jay Apperson*, Assistant United States Attorneys, were on the initial brief (responding to Mr. Long's pro se filings) for appellee.

Before BECKWITH and EASTERLY, *Associate Judges*, and BELSON, *Senior Judge*.

EASTERLY, *Associate Judge*: A D.C. prisoner seeking to collaterally attack his conviction or sentence may request relief under D.C. Code § 23-110 (2013 Repl.), but if his petition is "second or successive," he must overcome additional procedural hurdles to obtain review on the merits of his claims. D.C. Code § 23-110 (e). Mr. Long was convicted of murder and other charges in 1998 and was sentenced to life without parole. This court affirmed his convictions, but subsequently granted a motion to recall the mandate and remanded his case for resentencing. In the meantime, over the course of 13 years, Mr. Long filed three motions for collateral review of his 1998 convictions under D.C. Code § 23-110; the third motion was filed in 2016 after the trial court resentenced him on remand. In this consolidated appeal, Mr. Long seeks review of the denial of his second and third § 23-110 motions challenging his convictions. The government claims both motions are procedurally barred as second or successive. As to the 2016 § 23-110 motion, we disagree.

In *Magwood v. Patterson*, the Supreme Court considered what constitutes a "second or successive" habeas petition under 28 U.S.C. § 2254 (2012) and clarified that the dispositive inquiry is not whether the prisoner was raising the same claims in multiple habeas petitions, but rather whether he was challenging the same

"judgment." 561 U.S. 320, 331 (2010). The Court then concluded that "where . . . there is a new judgment intervening between two habeas petitions, an application challenging the resulting new judgment is not 'second or successive' at all." *Id*. at 341–42 (citation and internal quotation marks omitted). In *Magwood*, the habeas petitioner had been resentenced—resulting in a new judgment—and was only seeking to collaterally attack his new sentence (not his underlying conviction); but applying the analysis of *Magwood*, a majority of the federal circuits that have considered the question have concluded that when a habeas petitioner (under § 2254 or 28 U.S.C. § 2255 (2012)) has been resentenced and received a new judgment, a subsequent habeas petition challenging his underlying conviction *and/or* his sentence will not be procedurally barred as "second or successive." Persuaded by this analysis, we follow the majority rule. Thus we vacate the denial of Mr. Long's 2016 § 23-110 motion and remand for consideration on the merits.

Separately, Mr. Long seeks review, on direct appeal, of his new sentence post-remand. For first-degree murder while armed, the trial court sentenced Mr. Long to a term of incarceration of thirty-five years to life, but under the sentencing scheme in place at the time of Mr. Long's offense, the trial court was only authorized to give Mr. Long a life sentence, leaving the decision-making about his parole eligibility entirely to the paroling authority (which in turn was authorized to

consider whether to release Mr. Long after thirty years imprisonment).
Accordingly, we vacate Mr. Long's sentence for first-degree murder and remand
for resentencing.

## I. Facts and Procedural History[3]

Mr. Long was convicted in 1998 of first-degree murder while armed[4] and a
number of lesser offenses. After finding three statutory aggravating factors, D.C.
Code § 22-2404.1 (1996 Repl.) (listing "aggravating circumstances"), the trial
court sentenced Mr. Long to life in prison without the possibility of parole
(LWOP) on the first-degree murder while armed charge. Mr. Long appealed his
conviction to this court. In that direct appeal, his court-appointed counsel alleged
violations of his Sixth Amendment right to a speedy trial and denial of his right to

---

[3] As we have summarized the facts of this case in prior decisions, *Long v. United States* (*Long I*), 910 A.2d 298, 301–02 (D.C. 2006); *Long v. United States* (*Long II*), 36 A.3d 363, 365–72 (D.C. 2010); *id.* at 380–87 (Schwelb, J., dissenting); *Long v. United States* (*Long III*), 83 A.3d 369, 372–75 (D.C. 2013), we detail only so much of the facts and procedural history as is necessary to put the legal issues in their proper context. Moreover, although a number of Superior Court judges have made rulings in Mr. Long's case, we identify by name only the judges that made the rulings currently being reviewed. Lastly, the identities of counsel who represented Mr. Long prior to the instant case are noted in *Long III*, 83 A.3d at 376 n.12.

[4] D.C. Code §§ 22-2401, -3202 (1996 Repl.).

a fair trial based on an allegedly improper closing argument by the government. *See Long I*, 910 A.2d at 302–06. Mr. Long's appellate counsel also filed, in 2003, a motion to vacate his conviction under § 23-110, alleging that he had received ineffective assistance of counsel[5] at trial. *Id.* at 301, 306. After the Superior Court denied his 2003 § 23-110 motion without a hearing, this court consolidated that appeal with his direct appeal. *Id*. at 301, 307. In *Long I*, this court affirmed Mr. Long's conviction on direct appeal, but vacated the denial of Mr. Long's 2003 § 23-110 motion and remanded for a hearing. *Id.* at 308–11. The Superior Court subsequently held a hearing, rejected Mr. Long's ineffective assistance claim, and again denied Mr. Long's 2003 § 23-110 motion. *See Long II*, 36 A.3d at 365–66.

Mr. Long, represented by new counsel, again appealed the denial of his § 23-110 motion on the merits as well as the denial of a Rule 35 motion (initially filed pro se) to correct his sentence in light of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).[6] A divided panel of this court affirmed, concluding, *inter alia*, that Mr. Long's *Apprendi* challenge was

---

[5] *See Strickland v. Washington*, 466 U.S. 668 (1984).

[6] Mr. Long argued that his initial sentence was unconstitutional because the trial court had relied on three aggravating factors that had not been found by a jury in order to sentence him to LWOP. *Long II*, 36 A.3d at 376.

procedurally barred because he had failed to raise it during the pendency of his direct appeal. *Long II*, 36 A.3d at 366, 378–79.

Shortly after *Long II* was decided, Mr. Long filed a motion to recall the mandate that issued after *Long I*, arguing that he had received ineffective assistance of counsel on his direct appeal because his appellate counsel had failed to raise an *Apprendi* challenge to his LWOP sentence. *Long III*, 83 A.3d at 373–75. This court granted Mr. Long's motion to recall the mandate, reopened his direct appeal, and concluded that Mr. Long had been prejudiced by appellate counsel's failure to raise a meritorious *Apprendi* challenge. *Id.* at 384. The court vacated Mr. Long's sentence, and remanded the case to the trial court for resentencing. *Id.*

Meanwhile, in 2012, about the same time Mr. Long filed his motion to recall the mandate that led to this court's opinion in *Long III*, Mr. Long filed a § 23-110 motion, pro se, in Superior Court. In that motion, Mr. Long raised challenges to his conviction based on allegations of prosecutorial vindictiveness and the knowing presentation of perjured testimony, in violation of the due process protections of the Fifth Amendment. In April 2014, the trial court (Smith, J.),

without requesting a response from the government and without holding a hearing, denied Mr. Long's 2012 pro se motion on the merits.

One month later, on May 28, 2014, the trial court (Leibovitz, J.), pursuant to the decision of this court in *Long III*, held a sentencing hearing,[7] after which it issued a new judgment and commitment order, *nunc pro tunc* to September 4, 1998, the date of Mr. Long's original sentencing. The court imposed a new sentence of thirty-five years to life for Mr. Long's first-degree murder conviction and lesser terms of years, set to run concurrently, for his other convictions.

Mr. Long filed pro se notices of appeal from both the denial of his 2012 pro se § 23-110 motion and from his resentencing in his direct appeal, and these

---

[7] It was undisputed at this proceeding that Mr. Long's sentences had been vacated and that the trial court was sentencing Mr. Long anew. Prior to the hearing the court received sentencing memoranda from the government and Mr. Long, and a number of letters submitted on Mr. Long's behalf. And at the hearing, the court heard argument from counsel and gave Mr. Long an opportunity to speak. In announcing its sentence, the court made clear that it was sentencing Mr. Long based on its own assessment of these materials and the facts in the case, that it did not feel bound by the decision-making of the original sentencing judge, and indeed that, even if it had the discretion to do so, it would not find that the offense satisfied any of the three sentencing enhancements that the original trial court found under § 22-2404.1 (b) ("(4) The murder was especially heinous, atrocious, or cruel; . . . (10) The murder victim was especially vulnerable . . .; [and] (11) The murder [wa]s committed after substantial planning . . . .").

appeals were consolidated. Both Mr. Long and the government filed briefs with the court. This division of the court then appointed Mr. Long new counsel, and the parties submitted supplemental briefs. In addition, Mr. Long's new counsel, in response to the government's assertion in its initial and supplemental briefs that Mr. Long's 2012 § 23-110 motion was procedurally barred as "second or successive," filed another § 23-110 motion in 2016. In this motion counsel renewed the claims Mr. Long had made in his 2012 pro se motion, but, citing the Supreme Court's decision in *Magwood v. Patterson*, counsel argued that these claims were not procedurally barred because they were collateral challenges to a new judgment, i.e., Mr. Long's judgment and commitment order that issued on May 28, 2014.

The trial court (Leibovitz, J.) denied this 2016 § 23-110 motion without a hearing, ruling that Mr. Long's "re-sentenc[ing] does not convert a motion that presented a successive claim regarding his trial into a fresh claim."[8] Mr. Long appealed the denial of his 2016 motion, that appeal was consolidated with Mr. Long's appeal of his 2012 pro se motion and his direct appeal from his sentence,

---

[8] The trial court also noted that arguments in the 2016 § 23-110 motion had been "addressed" in the order denying Mr. Long's 2012 pro se motion and were the subject of a pending appeal. *But see infra* note 23.

and the parties filed a second set of supplemental briefs focusing on the import of the Supreme Court's decision in *Magwood.*

## II.    Mr. Long's Collateral Challenges to His Convictions

We first address Mr. Long's efforts to challenge his conviction via a § 23-110 motion and specifically examine whether his 2016 motion was procedurally barred. D.C. Code § 23-110 (e) provides "[t]he [Superior] [C]ourt shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." This bar on second or successive motions originated with 28 U.S.C. § 2255 (affording habeas relief to federal prisoners), *see Magwood*, 561 U.S. at 337, which, prior to its revision in 1996,[9] contained language virtually identical to D.C. Code § 23-110.[10] This procedural bar was extended to 28 U.S.C.

---

[9]    28 U.S.C. § 2255 was amended in 1996 by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (codified, as amended, in scattered sections of the U.S. Code, including 28 U.S.C §§ 2244–55).

[10]    *Compare* D.C. Code § 23-110 (e) ("The [Superior] [C]ourt shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."), *with* 28 U.S.C. § 2255 (1996) ("The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."). *See also Head v. United States*, 489 A.2d 450, 451 n.4 (D.C. 1985) (acknowledging that § 23-110 and § 2255 are "nearly identical and

(continued…)

§ 2254 (affording habeas relief to state prisoners) with the passage of AEDPA. *See* 28 U.S.C. § 2244 (2012); *Magwood*, 561 U.S. at 337–38 (acknowledging the extension). But none of these statutes defines the phrase "second or successive."

That said, it is "well settled," in this court and the federal courts "that the phrase ['second or successive'] does not simply refer to all [habeas petitions] filed second or successively in time." *Magwood*, 561 U.S. at 332 (alterations and internal quotation marks omitted) (citing examples).[11] Instead, it is understood that "[t]he phrase 'second or successive petition' is a term of art." *Slack v. McDaniel*, 529 U.S. 473, 486 (2010). This court has long looked to federal habeas case law to

---

(…continued)
functionally equivalent" (quoting *Streater v. United States*, 429 A.2d 173, 174 (D.C. 1980)).

[11] For cases from this court, see, for example, *Strozier v. United States*, 991 A.2d 778, 788–89 (D.C. 2010) (disagreeing with the trial court's assessment that the second petition could be denied on procedural grounds because it supplemented the first and was filed during the pendency of the direct appeal); *Peoples v. Roach*, 669 A.2d 700, 702 n.5 (D.C. 1995) (acknowledging that a § 23-110 motion might be reviewed in "special circumstances" even if it raised the same grounds previously rejected in an earlier § 23-110); *Brown v. United States*, 656 A.2d 1133, 1136 (D.C. 1995) (concluding that where defendant received ineffective assistance of counsel at his first § 23-110 hearing, "the first hearing was a nullity and may not serve as a bar to a successive § 23-110 petition"); *Pettaway v. United States*, 390 A.2d 981, 985 (D.C. 1978) (affirming the denial of a § 23-110 motion as vague and conclusory but "mak[ing] clear" that, under those circumstances, the court's decision "does not bar a new application by appellant to the trial court").

interpret parallel provisions of § 23-110[12] and the meaning of the bar on "second or successive" motions, in particular.[13]  *See, e.g.*, *Peoples*, 669 A.2d at 703 (citing *Sanders v. United States*, 373 U.S. 1, 15–16 (1963)); *Vaughn v. United States*, 600 A.2d 96, 97 (D.C. 1991) (citing *Sanders* and *Salinger v. Loisel*, 265 U.S. 224, 231 (1924)); *Hurt v. St. Elizabeths Hosp.*, 366 A.2d 780, 781 (D.C. 1976) (citing *Sanders*).  We continue to do so in this case.

The Supreme Court recently clarified what constitutes a "second or successive" habeas petition in *Magwood v. Patterson*, 561 U.S. 329 (2010).  In *Magwood*, a state prisoner filed a § 2254 petition challenging his conviction and death sentence.  A federal district court granted him partial, conditional relief, directing that he be resentenced.  Upon resentencing, he again received a death

---

[12] *See Head*, 489 A.2d at 451 n.4 (explaining this court "rel[ies] on federal court interpretations of § 2255 in construing § 23-110," because the former was the model for the latter); *see also* Carl S. Rauh & Earl J. Silbert, *Criminal Law and Procedure: D.C. Court Reform and Criminal Procedure Act of 1970*, 20 Am. U.L. Rev. 252, 339 (1970–1971) ("Inasmuch as the provisions of . . . D.C. Code § [23-]110 are virtually identical to the provisions of 28 U.S.C. § 2255, there is a vast body of judicial opinion construing the statutory language and defining the scope of the remedy.").

[13] We do not rely, however, on federal case law interpreting additional restrictions imposed by AEDPA on post-conviction relief under §§ 2244, 2254 and 2255.  AEDPA did not alter § 23-110, and thus these restrictions "are not applicable at all in the District of Columbia courts," *Graham v. United States*, 895 A2d 305, 307 (D.C. 2006).

sentence, and thereafter he filed another habeas petition. This petition was rejected by the U.S. Court of Appeals for the Eleventh Circuit as "second or successive," because Mr. Magwood had previously filed an earlier-in-time motion, in which he "could have mounted the same challenge to his original death sentence." *Id.* at 323–24. The Supreme Court, however, reversed. *Id.* In so doing, the Court considered and rejected the government's argument that the "second or successive" procedural bar was "claim-focused" and was meant to limit habeas petitioners to "one, but only one, full and fair opportunity to wage a collateral attack." *Id.* at 331. Instead, the Court explained, because the "second or successive" bar is *judgment*-based, a prisoner may, under certain circumstances, file more than one habeas petition in the life of a case, without a later-in-time petition being barred as "second or successive." *Id.* at 339.

The Court looked to the text of § 2254 (b), which authorizes courts to consider "applications for a writ of habeas corpus pursuant to a *judgment* of the State court" and which allows for the corresponding invalidation of the judgment.[14] *Id.* at 332–33 (quoting 28 U.S.C. § 2254 (b)(1)). The Court concluded that, where

---

[14] The Court concluded that the text of § 2254 controlled, although the court also determined that a judgment-based understanding of the second or successive bar was consistent with its precedents, 561 U.S. at 336–37, and the "historical underpinnings" of the phrase, *id*. at 337.

a "new judgment" intervenes between the first petition and one filed later in time, the later-in-time petition cannot be called "second or successive." *Id.* at 338, 342. Applying this analysis to Mr. Magwood's case, the Court further concluded that, by virtue of being resentenced, albeit again to death, Mr. Magwood received a new judgment such that his federal habeas petition filed after resentencing was the first petition alleging constitutional infirmities with *that* judgment. *Id.* at 331. The fact that the judgment incorporated an earlier error that could have been challenged in the habeas petition filed before he was resentenced was immaterial: "An error made a second time is still a new error." *Id*. at 339.

The Supreme Court in *Magwood* left open whether the second or successive bar would nonetheless apply if a defendant had previously sought habeas relief, had been resentenced and obtained a new judgment, and then sought to challenge his underlying conviction in addition to (or instead of) his new sentence. *See id.* at 342 (explaining that "[t]his case gives us no occasion to address that question, because [Mr.] Magwood has not attempted to challenge his underlying conviction"). But of the eight federal appellate courts that have addressed this issue, six (the Second, Third, Fourth, Sixth, Ninth and Eleventh Circuits) have held that the judgment-based analysis of *Magwood* compels the conclusion that a habeas petition filed after resentencing and the corresponding issuance of a new

judgment may not be barred as second or successive, whether the petitioner is challenging his new sentence or the constitutionality of his original, undisturbed conviction.[15]  Another federal appeals court (the Fifth Circuit), while taking a more limited view under its precedent of what constitutes a new judgment, appears to agree that *if* a habeas petitioner has received a new judgment, a subsequent habeas petition challenging the conviction or sentence would not be second or successive.[16]  Only one federal appellate court (the Seventh Circuit) has declined to endorse this understanding of the reach of the second or successive bar, and its decision is primarily attributable to its adherence to its own contrary precedent which the Supreme Court had not clearly overruled—not a rejection of the analysis of the majority of other circuits.[17]

---

[15]  *See Johnson v. United States*, 623 F.3d 41, 46 (2d Cir. 2010); *In re Brown*, 594 F. App'x 726, 729 (3d Cir. 2014); *In re Gray*, 850 F.3d 139, 142–43 (4th Cir. 2017); *King v. Morgan*, 807 F.3d 154, 157 (6th Cir. 2015); *Wentzell v. Neven*, 674 F.3d 1124, 1126–28 (9th Cir. 2012); *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1281 (11th Cir. 2014) (per curiam).

[16]  *In re Lampton*, 667 F.3d 585, 587–90 (5th Cir. 2012); *see also In re Parker*, 575 F. App'x 415, 417–19 (5th Cir. 2014) (per curiam) (denying habeas relief under *Lampton*; citing *Johnson* and *Wetzell* approvingly as distinguishable examples of cases where "courts *have* found . . . a new, intervening judgment" (emphasis added)).

[17]  *Suggs v. United States*, 705 F.3d 279, 284 (7th Cir. 2013) ("Because the question before us is settled in our circuit and the Supreme Court considered the question but expressly declined to answer it, we follow our circuit's precedents and hold that Suggs' motion is second or successive.  Even if the Court's reasoning in *Magwood* could extend to the facts here, we believe it would be premature to

(continued…)

The rationale underlying the majority rule is clearly and comprehensively set forth in an opinion by Judge Sutton, writing on behalf of a unanimous panel of the Sixth Circuit in *King*:

> In the [Supreme] Court's words: Where there is a new judgment intervening between the two habeas petitions, an application challenging the resulting new judgment is not "second or successive" at all. Because petitions seek the invalidation (in whole or in part) of the judgment authorizing the prisoner's confinement, *Magwood* tells us, no part of the petition counts as second or successive as long as it is the first to challenge the new judgment. That means that, if an initial federal habeas petition (or state-court collateral challenge) leads to an amended judgment, the first petition that follows the entry of the new judgment is not second or successive, even if it raises claims that the inmate could have raised in the first petition. . . . *This judgment-based reasoning naturally applies to all new judgments, whether they capture new sentences or new convictions or merely reinstate one or the other.*
>
> Strengthening that inference is the reality that *Magwood* could have adopted a claims-based approach to the

(…continued)
depart from our precedent where the Court has not asked us to."); *see also id.* at 284–85 ("We recognize that our reading of *Magwood* differs from the approach taken by other circuits . . . [which] found *Magwood*'s teaching sufficiently clear to extend it to the circumstances before them. Here, however, where we have clear circuit precedent directing us otherwise, we do not find *Magwood*'s guidance to be clear enough to depart from our precedent."). *But see id.* at 288 (Sykes, J., dissenting) (opining "that *Magwood*'s interpretation of § 2244 (b) is clear enough to require a departure from circuit precedent that directly conflicts").

problem before it. The Court could have applied the second-petition rule on a claim-by-claim basis, separating the claims within a petition and deeming some successive and others not. But it declined. It reasoned that such an approach would not respect the language of the statute and thus would elide the difference between an "application" and a "claim," a distinction that the statute makes important because AEDPA uses the phrase "second or successive" to modify "application." The same reasoning applies to convictions.

As a matter of custom and usage, moreover, a judgment in a criminal case includes both the adjudication of guilt and the sentence. Even when the only change in the state-court proceeding relates to the sentence, the new judgment will reinstate the conviction and the modified sentence. *If the existence of a new judgment is dispositive in resetting the "second or successive" count, and if the count applies to petitions, not claims, the existence of a new judgment permits a new application to attack the sentence, the conviction, or both.*

807 F.3d at 157–58 (internal quotation marks, emphases, citations, and alterations omitted) (emphases added).

Judge Sutton also observed that allowing a new judgment to wipe the slate clean in this manner makes sense for practical reasons:

Some claims within a habeas application, it turns out, will apply to the underlying conviction and the new sentence. What then? Would the second-petition rule apply to one claim but not the other? That would make little sense and would be difficult to implement as well. Nor is this possibility merely theoretical. If the same judge presided over the original conviction and handled the resentencing, any challenge to the judge as

adjudicator (e.g., for bias) would cover both proceedings. If the trial jury found facts applicable to the conviction and sentence, any challenge to the jury as adjudicator (e.g., voir dire problems, a *Batson* challenge, juror misconduct, consideration of improper evidence) would cover both. And if the government withheld exculpatory evidence until after the resentencing, a claim under *Brady v. Maryland*, could apply to both. . . .

[Meanwhile, a] contrary approach . . . would shortchange some prisoners whose incentives to challenge a conviction may differ after being resentenced. Suppose a defendant is convicted on two counts, and just one of them involves a constitutional error. If the defendant receives five-year concurrent sentences on both convictions, his incentives to challenge the defective conviction in his first habeas application [are] low; success on that challenge alone will not change his time in jail. If resentencing makes those five-year sentences consecutive, however, his incentives change considerably, because success now decreases his sentence by half. Someone in King's position could indeed face this precise problem. He may have every reason to focus on the sentencing issues in his first petition (when facing concurrent murder sentences), while he has every reason in his second petition to focus on each murder conviction (when facing consecutive sentences on them). *Magwood*'s judgment-based rule ensures that a court's choice to reenter a different judgment does not leave a petitioner unable to raise a now-more-critical challenge free from the "second or successive" limits.

807 F.3d at 158–59 (internal quotation marks, emphases, citations, and alterations omitted).

Having reviewed the landscape of federal case law post-*Magwood* and discerned the majority view that a habeas petition filed post-resentencing may attack the sentence or underlying conviction without running afoul of the bar on second or successive petitions,[18] we turn our attention to D.C. Code § 23-110,

---

[18] The government's briefing does not acknowledge this majority view and instead implies that the weight of authority limits the holding of *Magwood* to its facts. The government asserts that "as the Supreme Court noted in *Magwood*, federal appellate courts that had considered this issue had rejected the argument that [Mr. Long] makes"—i.e., that his new judgment wipes the slate clean for a post-conviction challenge to his conviction as well as his sentence—"and they continue to do so." For this latter proposition, the government cites *In re Hensley*, 836 F.3d 504, 506 (5th Cir. 2016), and *Suggs*, 705 F.3d at 282–284, as well as what it characterizes as a "cogent, closely reasoned dissent" in *Patterson v. Sec'y, Fla. Dep't of Corr.*, 812 F.3d 885, 888–889 (11th Cir. 2016).

The government's reliance on decisions of "federal appellate courts that *had considered* this issue" before *Magwood* is unavailing; save in the Seventh Circuit, *see supra* note 17, these decisions have been overturned by the post-*Magwood* decisions cited above, *see supra* note 15. Equally unhelpful is the government's citation to *In re Hensley*, 836 F.3d at 506–07, which is an extension of *Lampton*, *see supra* note 16; both *Hensley* and *Lampton* address only what constitutes a new judgment and appear not to take issue with the majority understanding that a new judgment wipes the slate clean for the purpose of the second or successive bar. Similarly, *Patterson* (which has now been reversed by the Eleventh Circuit sitting *en banc*) concerns what constitutes a new judgment—not the effect of a new judgment under *Magwood*. *Patterson v. Sec'y, Fla. Dep't of Corr.*, 849 F.3d 1321 (11th Cir. 2017) (en banc) (reaffirming *Insignares*, cited *supra* note 15, but holding that prisoner does not receive a new judgment when state court issues an order removing a chemical castration requirement). This leaves the government with only one decision, *Suggs*, that (relying on binding circuit precedent that does not bind us) has read *Magwood* so narrowly.

which, as noted above, similarly includes a bar on "second or successive" motions.[19]

We acknowledge at the outset that the precise text interpreted by the Supreme Court in *Magwood*—"applications for a writ of habeas corpus pursuant to a judgment of the state court," 28 U.S.C. § 2254 (b)—does not appear in § 23-110, which refers instead to "motions" by a prisoner "attacking a sentence." But 28 U.S.C. § 2255, upon which § 23-110 was modeled, *see supra* note 12, likewise does not contain the same text, and yet every federal court to consider the issue has held that *Magwood* prescribes how the second or successive bar applies to requests for post-conviction relief by federal as well as state prisoners.[20] As the Second

---

[19] Our consideration of this question as a division is not barred by *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971). Although a number of our cases suggest a claims-based application of the bar on second or successive petitions, *see, e.g.*, *Hurt*, 366 A.2d at 781 (citing *Sanders* for the proposition that "to the extent the allegations in the motion merely repeat the previously rejected contentions in the habeas corpus petition, they need not have been considered by the trial court judge"), in no case have we considered the question before us and held that a habeas petition filed after the issuance of a new judgment is a second or successive petition. *See Magwood*, 561 U.S. at 336 (acknowledging prior decisions where the Court upheld the denial of habeas relief because the "petitioners did not avail themselves of prior opportunities to present the claims" but explaining that none of the decisions "applies the phrase 'second or successive' to an application challenging a new judgment").

[20] *See Johnson*, 623 F.3d at 45; *Zavala v. Attorney Gen. of the United States*, 655 F. App'x 927, 930 (3d Cir. 2016) (per curiam); *In re Gray*, 850 F.3d at

(continued…)

Circuit explained in *Johnson,* "[t]he term 'sentence' in § 2255 (a) . . . does not have a materially different meaning than the term 'judgment' in § 2254 (b). These two terms are often used interchangeably." 623 F.3d at 45 (quoting *Burton v. Stewart*, 549 U.S. 147, 156 (2007) ("Final judgment in a criminal case means sentence. The sentence is the judgment.") and Black's Law Dictionary (8th ed. 2004) (defining "sentence" as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty")). And, "[a]s a practical matter, courts routinely allow federal prisoners to challenge their conviction, in addition to their sentence, under § 2255 (a). For that purpose, the word 'sentence' in § 2255 (a) is understood to encompass both the conviction and the sentence." *Id.* Likewise, D.C. prisoners are permitted to use § 23-110 motions to challenge both components of a judgment—the sentence *and* the underlying conviction.

Additionally, just as "nothing in the AEDPA indicates that Congress intended the 'second or successive' rules to operate differently with regard to state and federal prisoners," *Johnson*, 623 F.3d at 45 (quoting *Urinyi v. United States*,

---

(…continued)
141 n.1 (4th Cir. 2017); *In re Lampton*, 667 F.3d at 588; *Ajan v. United States*, 731 F.3d 629, 631 (6th Cir. 2013); *Suggs*, 705 F.3d at 283 n.1; *United States v. Ailsworth*, 513 F. App'x 720, 722 (10th Cir. 2013); *Betzner v. United States*, 470 F. App'x 744, 746 n.3 (11th Cir. 2012).

607 F.3d 318, 321 (2d Cir. 2010))—to the contrary, as noted above, the second or successive bar on § 2254 petitions originated in § 2255—there is nothing in § 23-110 or its history that indicates that Congress intended the "second or successive" rules to operate differently with regard to District of Columbia prisoners.  Nor does the passage of AEDPA, which altered the federal habeas statutes but not D.C. Code § 23-110, give us a reason to distinguish federal cases interpreting the bar on second or successive habeas petitions.  Although that procedural bar, as it applies to petitions under §§ 2254 and 2255, is now located in § 2244, its meaning has not changed.[21]

Lastly, § 23-110 contains other language that naturally supports our adherence to the Court's judgment-based interpretation of the bar on second or successive habeas petitions in *Magwood*.  In particular, § 23-110 (c) sets forth the circumstances when a trial court may grant relief, including if "the *judgment* was rendered without jurisdiction" or if the prisoner's constitutional rights have been infringed upon in such a way "as to render the *judgment* vulnerable to collateral

---

[21]  *See Magwood*, 561 U.S. at 337 (explaining that pre-AEDPA precedent "is consistent with our reading" of the bar on second or successive habeas petitions); *see also Goodrum v. Busby*, 824 F.3d 1188, 1193 (9th Cir. 2016) ("[C]ourts have naturally assumed that the term [second or successive] carries the same meaning it did under the pre-AEDPA . . . doctrine.").

attack." *Id.* (emphases added). And it ties the relief available to the judgment: "the court *shall vacate and set the judgment aside* and shall discharge the prisoner, resentence him, grant a new trial, or correct the sentence, as may appear appropriate." *Id.* (emphasis added); *cf. Junior v. United States*, 634 A.2d 411, 417–18 (D.C. 1993) (holding that it was error to construe a resentencing motion as a § 23-110 motion because a judgment had not yet been entered; without a judgment, no collateral attack was yet possible).

For all of these reasons, we conclude that the bar on second or successive motions under D.C. Code § 23-110, like the bar on second or successive petitions filed under 28 U.S.C. §§ 2254 and 2255, is judgment-based. Further, we follow the majority of the federal appellate courts in applying this judgment-based understanding to the full extent of its logic, and hold that, after being resentenced and receiving a new judgment, a prisoner may file a § 23-110 motion attacking either his sentence or underlying conviction without running afoul of the bar on second or successive motions. Applying our holding to this case, we conclude that, although Mr. Long's 2016 § 23-110 motion was chronologically his third such motion, because he filed it after he was resentenced and received a new

judgment,[22] it was not second or successive[23] and it should not have been dismissed as procedurally barred.[24]

---

[22] In a footnote in its first supplemental brief, the government argued, without citation to any authority, that Mr. Long's resentencing did not result in a new judgment. The government did not renew that argument in its second supplemental brief addressing whether Mr. Long's 2016 § 23-110 petition was procedurally barred. But even if this argument has not been abandoned or waived, it has no merit. As detailed above, the trial court held a full hearing to resentence Mr. Long, *see supra* note 7 & accompanying text. And the trial court subsequently issued a new judgment and commitment order, *nunc pro tunc* to September 4, 1998, the date of Mr. Long's original sentencing. In this jurisdiction, as in the federal courts, a sentence is an integral part of a judgment. *Compare* Super. Ct. Crim. R. 32 (f) ("[T]he judgment of conviction . . . [includes] the sentence."), *with* Fed. R. Crim. P. 32 (k)(1) (same); *see also Deal v. United States*, 508 U.S. 129, 132 (1993) ("[T]he entry of a final judgment of conviction . . . includes both the adjudication of guilt and the sentence."). And a resentencing such as occurred in Mr. Long's case results in a new judgment. *See, e.g.*, *Magwood*, 561 U.S. at 326 (leaving his convictions undisturbed, the trial court at the resentencing hearing "imposed a penalty of death, stating on the record that the new 'judgment and sentence were the result of a complete and new assessment of all the evidence, arguments of counsel, and law'" (brackets omitted)); *id.* at 339 (contrasting the case with an earlier decision in which the Court had recognized that the outcome might have been different "had there been a new judgment intervening between the two habeas petitions" and then observing that "there is such an intervening judgment here").

[23] Under this reasoning, Mr. Long's 2012 § 23-110 petition, also a subject of this appeal, is directed to a judgment that no longer exists. Accordingly we have no cause address it.

[24] We decline the government's invitation to affirm the trial court's procedural bar ruling on alternative grounds, namely that Mr. Long's post-conviction claims were considered and rejected on direct appeal. *See Doepel v. United States*, 510 A.2d 1044, 1045–46 (D.C. 1986) (explaining "that where an appellate court has disposed of an issue on appeal, it will not be considered afresh on collateral attack in a trial court of the same judicial system, absent special circumstances"). Mr. Long seeks post-conviction relief on the grounds that (1) the

(continued…)

**III.  Mr. Long's Challenge on Direct Appeal to His Sentence Post-**

**Resentencing**

Mr. Long also challenges (on direct appeal) the trial court's imposition, upon resentencing, of a term of incarceration of thirty-five years to life for his first-degree murder conviction.[25]  He argues that the trial court mistakenly failed to apply the law in effect at the time of his offense, which required imposition of a life sentence with "eligibil[ity] for parole . . . after . . . 30 years," D.C. Code § 22-2404 (b) (1996 Repl.) (now codified, as amended, at D.C. Code § 22-2104.01 (2013 Repl.)), and did not authorize the imposition of a minimum sentence or a sentencing range.  The government does not respond to this argument.[26]

---

(…continued)

government vindictively decided to charge him with conspiracy after the jury at his first trial hung on the most serious charges and the government was forced to retry him; and (2) the government improperly relied on perjured testimony to obtain a superseding indictment.  Neither of these claims was the subject of his direct appeal, *see Long I*, 910 A.2d at 304 & n.3, 306 (rejecting Mr. Long's speedy trial (under the Fifth and Sixth Amendments) and improper closing argument claims).

[25]  In his initial pro se briefs, Mr. Long indicated some concern that the trial court had imposed a second $400 fee to be paid to the victims of violent crime fund.  The record reflects however that the court, sentencing Mr. Long anew, imposed one $400 fee.  If Mr. Long has already paid this fee, as he indicates, no further payment will be necessary.

[26]  Instead, the government mistakenly addresses a different argument raised in Mr. Long's pro se brief to this court.

Reviewing this claim of legal error de novo,[27] we agree that the trial court erred. The law governing sentencing for first-degree murder at the time Mr. Long committed this offense gave one directive to the trial court: that "[t]he punishment for murder in the first degree shall be life imprisonment," D.C. Code § 22-2404 (a) (1996 Repl.) (now codified, as amended, at D.C. Code § 22-2104 (a) (2013 Repl.)); and one directive to the paroling authority (before August 1998, the D.C. Board of Parole; thereafter, the United States Parole Commission): that "[a] person convicted of murder in the first degree and upon whom a sentence of life imprisonment is imposed shall be eligible for parole only after the expiration of 30 years from the date of the commencement of the sentence," D.C. Code § 22-2404 (b) (1996 Repl.) (now codified, as amended, at § 22-2104 (b) (2013 Repl.)). As we explained in *Beale v. United States*, Congress "specifically determined the punishment for first[-]degree murder to be mandatory life imprisonment and barred release on parole for such a defendant until he ha[d] served 20 years[28] of his sentence." 465 A.2d 796, 806 (D.C. 1983), *overruled on other grounds by Winfield v. United States*, 676 A.2d 1 (D.C. 1996). In other words, under § 22-

---

[27] The government, focused on Mr. Long's pro se argument, *see supra* note 26, argues that we should review for plain error. But Mr. Long's claim that he should be resentenced under § 22-2404 to life imprisonment was preserved in the memorandum prior counsel submitted to the court before Mr. Long's resentencing.

[28] This had been raised to thirty years by the time Mr. Long committed the instant crime. *See* D.C. Code § 22-2404 (b) (1996 Repl.).

2404 (a) and (b), "a trial judge ha[d] no discretion when passing sentence on a first-degree murder conviction." *Garris v. United States*, 491 A.2d 511, 514 (D.C. 1985).

The plain language of the statute, in conjunction with *Beale* and *Garris*, makes it clear that the trial court was without authority to impose a minimum sentence; it could only impose a life sentence. And the court was likewise without authority to dictate when Mr. Long would become eligible for parole; by statute he will become eligible after thirty years.

## IV.  Conclusion

For the reasons set forth in this opinion, we vacate the denial of Mr. Long's 2016 § 23-110 motion and remand for consideration on the merits. Additionally, we vacate Mr. Long's sentence for first-degree murder and remand for the imposition of the proper sentence.

*So ordered.*